# P-SEND

## -O-

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARA BEEBE, | ) Case No. EDCV 06-345-OP |
| Plaintiff, | ) |
| vs. | ) MEMORANDUM OPINION; ORDER |
| JO ANNE B. BARNHART,[1] | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[2] now rules as follows with respect to the four disputed issues listed in the Joint Stipulation.[3]

/ / /

/ / /

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, the current Commissioner of Social Security, is hereby substituted as the Defendant herein.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)

[3] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation ("JS"), filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1.    Whether the ALJ properly considered the opinions of Plaintiff's treating physician;

2.    Whether the ALJ erred by failing to properly rate Plaintiff's mental impairment;

3.    Whether the ALJ erred by failing to properly evaluate Plaintiff's credibility; and

4.    Whether the ALJ erred by failing to properly consider the impact of Plaintiff's medications and their side effects on her ability to maintain employment.

(JS at 2.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the

2

1   Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452

2   (9th Cir. 1984).

3   **III.**

4   **DISCUSSION**

5   **A.**   **Reversal Is Not Warranted Based on the ALJ's Alleged Error with**

6   **Respect to the Opinions of Plaintiff's Treating Physicians.**

7          The ALJ found that Plaintiff had the medically determinable impairments of

8   asthma and major depressive disorder.  (AR at 13.)  Plaintiff contends the ALJ

9   erred because he failed to discuss the opinions of Plaintiff's treating physicians and

10  did not provide specific and legitimate reasons for rejecting those opinions.[4]  (JS at

11  5.)  Specifically, Plaintiff claims the ALJ failed to consider Plaintiff's other

12  impairments, such as chronic obstructive pulmonary disease ("COPD"), atrial

13  hypertrophy, and pulmonary hypertension, conditions mentioned by at least one of

14  Plaintiff's treating physicians, Dr. Wendell Wettstein.  (JS at 5, 6; see AR at 122,

15  123, 166, 168.)  Although Plaintiff also references error with respect to the

16  opinions of another treating physician, Dr. Mohinder Ahluwalia, Plaintiff does not

17  specifically provide this Court with any specific opinion(s) of that doctor she

18  contends were wrongly rejected by the ALJ.[5]

19         It is well-established in the Ninth Circuit that a treating physician's opinions

20  are entitled to special weight, because a treating physician is employed to cure and

21

22  _____

23      [4]  Plaintiff apparently does not contend that the opinions of Plaintiff's
    psychiatrist were rejected by the ALJ.  In fact, the ALJ noted that his residual
24  functional capacity assessment was consistent with the opinions of the state agency
    psychiatrist, as well as claimant's treating psychiatrist, Dr. Trevinder Ahluwalia.
25  (AR at 14.)

26
       [5] Although not entirely clear from the doctor's handwritten notes, in June
27  2003 Dr. M. Ahluwalia appears to have diagnosed Plaintiff with emphysema.  (See
    AR at 172, 182.)
28

3

1  has a greater opportunity to know and observe the patient as an individual.

2  McAllister v. Sullivan, 880 F.2d 1086, 1089 (9th Cir. 1989).  "The treating

3  physician's opinion is not, however, necessarily conclusive as to either a physical

4  condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,

5  751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on

6  whether it is supported by sufficient medical data and is consistent with other

7  evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating physician's

8  opinion is uncontroverted by another doctor, it may be rejected only for "clear and

9  convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v.

10  Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating physician's opinion

11  is controverted, it may be rejected only if the ALJ makes findings setting forth

12  specific and legitimate reasons that are based on the substantial evidence of record.

13  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at

14  751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

15      On March 26, 2003, Plaintiff's treating physician, Wendell Wettstein,

16  diagnosed Plaintiff with chronic asthma, COPD, secondary to asthma, and possible

17  developing pulmonary hypertension, secondary to asthma.  (AR at 123.)  Dr.

18  Wettstein referred Plaintiff to a radiologist for comment about Plaintiff's COPD.

19  (AR at 126.)  According to that radiologist, "COPD is primarily a clinical

20  diagnosis.  Early COPD could remain undetected radiographically. . . .

21  Radiographically it is questionable whether or not this patient has early mild

22  changes of COPD."  (Id.)

23      Notwithstanding this ambiguity, the agency consulting examiner and

24  medical consultants adopted Dr. Wettstein's diagnosis of asthma and finding of

25  COPD.  Dr. Enriquez, the consultative examiner, also noted a history of COPD and

26  asthma (AR at 106, 116); the agency medical consultant who prepared the Physical

27  Residual Functional Capacity Assessment, after consultation with Dr. Enriquez

28  regarding Plaintiff's pulmonary function test, reduced his assessment of Plaintiff's

4

1  residual functional capacity from medium to light work (AR at 115); and Dr. G.

2  Taylor-Holmes, also an agency medical consultant, confirmed COPD secondary to

3  asthma.  (AR at 137.)  Moreover, the ALJ noted that "[t]here is no serious

4  disagreement in the record that the claimant's medically determinable impairments

5  [her asthma and depressive disorder], singly, or in combination, are 'severe.'"  (AR

6  at 13.)

7  　　　　Based on the above, and on its own review of the record, the Court finds

8  little or no disagreement between the treating and consulting physicians regarding

9  Plaintiff's physical impairments, and no evidence that the ALJ rejected the

10  opinions of Plaintiff's treating physicians.  Thus, there was no error.

11  **B.**　　**The ALJ's Failure to Specifically Rate the Plaintiff's Degree of**

12  　　　　**Functional Loss Resulting from Her Mental Impairment Constituted**

13  　　　　**Harmless Error.**

14  　　　　In her second disputed issue, Plaintiff claims that the ALJ erred by failing to

15  rate the degree of functional loss resulting from Plaintiff's mental impairment as

16  required by 20 C.F.R. section 404.1520a.  (JS at 7.)  Plaintiff contends that to avoid

17  error, the ALJ must rate the Plaintiff's degree of limitation in activities of daily

18  living, social functioning, concentration, and episodes of decompensation and that

19  he did not do so.

20  　　　　In making his determination that Plaintiff's mental impairment constituted a

21  severe impairment in combination with her asthma, the ALJ noted that his residual

22  functional capacity assessment was "consistent for the most part with the opinions

23  of the State Agency psychiatrist, as well as the claimant's treating psychiatrist,

24  Trevinder Ahluwalia, M.D."  (AR at 13, 14 (internal citations omitted).)  The

25  treating psychiatrist diagnosed Plaintiff with major depression and noted that her

26  ability to relate with fellow employees and supervisors would be limited due to her

27  angry and irritable mood.  (AR at 140-41.)  The state agency psychiatrist

28  specifically addressed the four categories of  functional loss set forth in 20 C.F.R.

5

section 404.1520a in his form "Rating of Functional Limitations," noting that Plaintiff had mild limitation in her restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild to moderate limitations in maintaining concentration, persistence, and pace; and no episodes of decompensation.  (AR at 152.)  After consideration of these reports, the ALJ found that Plaintiff "must work with things rather than people.  She may have occasional contact with the public, but must not engage in work activities involving responding to requests for information from the public."  (AR at 14.)

Although the ALJ did not specifically state that he was incorporating the functional assessments of the state agency psychiatrist, it is clear from his resulting decision that he considered and relied upon the state agency psychiatrist's functional assessment as well as the opinion of Dr. T. Ahluwalia in assessing Plaintiff's mental residual functional capacity.  Thus, even if it was error not to specifically incorporate the state agency psychiatrist's functional assessment findings, any error was harmless because the ALJ's findings were consistent with that assessment and with the opinion of the treating psychiatrist.  Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability).

**C.    The ALJ Properly Evaluated Plaintiff's Credibility.**

In her third disputed issue, Plaintiff contends that in finding Plaintiff not entirely credible, the ALJ failed to discuss Plaintiff's testimony, failed to identify what portions of Plaintiff's testimony he felt were not credible, and failed to identify any specific evidence that undermined that testimony.  (JS at 13.)  Plaintiff also claims that the only evidence discussed by the ALJ with respect to her credibility was the lack of supporting medical records and that this method of credibility assessment has been rejected by the Ninth Circuit in Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  (JS at 13.)

An ALJ may properly consider "testimony from physicians . . . concerning

6

the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities.  See, e.g., Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (citation omitted).  An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors;" "[t]ype, dosage, effectiveness, and adverse side-effects of any medication;" "[t]reatment, other than medication;" "[f]unctional restrictions;" "[t]he claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms.  Bunnel v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc) (citations omitted); see also Soc. Sec. Ruling 96-7p;[6] 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th

---

[6] The Ruling lists factors to be considered such as:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. Ruling 96-7p.

1   Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had

2   been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may

3   properly rely on claimant's daily activities, and the lack of side effects from

4   prescribed medication).

5        Here, the ALJ indicated several factors he considered when assessing

6   Plaintiff's credibility with respect to "her allegations concerning her symptoms and

7   their impact on her ability to work." (AR at 15.) Specifically, he stated that: i)

8   Plaintiff's credibility was reduced by the lack of objective medical evidence, from

9   any reviewing physician, to substantiate her claims of disabling impairments; ii)

10  Plaintiff had very little treatment – not of the amount, frequency, or intensity

11  consistent with her alleged degree of impairment; and iii) Plaintiff's activities of

12  daily living were not consistent with her alleged degree of pain and impairment

13  and tended to show she has the ability to work if motivated to do so. (AR at 15.)

14       The Court finds that the ALJ's adverse credibility determination was proper

15  because (a) the ALJ's discussion of Plaintiff's credibility reflects consideration of

16  the factors set forth in Social Security Ruling 96-7p, and (b) the ALJ's reasons

17  were supported by substantial evidence and were sufficiently specific to permit the

18  Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective

19  testimony.

20  **D.   The ALJ Did Not Err in Failing to Discuss the Impact of Plaintiff's**

21       **Medications and Their Side Effects.**

22       In her fourth disputed issue, Plaintiff contends that in violation of Social

23  Security Ruling 96-7p, the ALJ failed to consider the "type, dosage, effectiveness,

24  and side effects of any medication the individual takes or has taken to alleviate

25  pain or other symptoms." (JS at 17.) Specifically, Plaintiff contends that if the

26  ALJ chose to disregard Plaintiff's testimony as to the subjective limitations of side

27  effects, he must support that decision with specific findings similar to those

28  required for excess pain testimony, as long as the side effects are in fact associated

8

1    with the claimant's medications.  (JS at 17.)

2         Under Ninth Circuit law, the ALJ must "consider *all* factors that might have

3    a 'significant impact on an individual's ability to work.'"  Erickson v. Shalala, 9

4    F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Secretary of Health & Human

5    Serv., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)).  Such

6    factors "may include side effects of medications as well as subjective evidence of

7    pain."  Erickson, 9 F.3d at 818.  When the ALJ disregards the claimant's testimony

8    as to subjective limitations of side effects, he or she must support that decision

9    with specific findings similar to those required for excess pain testimony, as long

10   as the side effects are in fact associated with the claimant's medications.  See

11   Varney, 846 F.2d at 545; see also Muhammed v. Apfel, 1999 WL 260974 (N.D.

12   Cal. 1999).

13        Plaintiff contends she has been "prescribed many potent medications to treat

14   her medical conditions, including, but not limited to Theophylline, Serevent,

15   Pulmicort, and Albuterol."  (JS at 16.)  In her Disability Report form dated

16   February 27, 2003, Plaintiff reported that the theophylline made her restless and

17   gave her headaches (AR at 50), and that all the medications caused nervousness,

18   restlessness, nausea and headaches.  (AR at 83, 91.)  However, although she had

19   been treated with these asthma medications and Accolate (see AR at 91, 124), it is

20   unclear as to the medications Plaintiff was taking at the time of the hearing.  It

21   appears that at that time Plaintiff was taking at least Advair (an inhaler) and Theo-

22   dur (theophylline).  (AR at 95, 187.)  She testified that she no longer took the

23   Accolate (another asthma medication) because the Advair was "supposed to be all

24   encompassing."  (AR at 187, see also AR at 91.)  Notwithstanding the ambiguity,

25   she stated that the medications she takes for her asthma "somewhat" control her

26   wheezing.  (AR at 181.)  The only other side effect of these medications that she

27   mentioned experiencing was that if she uses her "rescue inhalers" or the breathing

28

machine too much, she experiences palpitations.[7]  (AR at 50, 186-87.)  Although it
does not appear this was mentioned to her treating physicians, the record reflects
that the consultative examiner, Dr. Enriquez, noted tachycardia on examination.
(AR at 117, 119.)  Nowhere did Plaintiff describe how any of these side effects
interfered with work, nor were they reported to her treating physicians.

With respect to her mental health, Plaintiff testified that she had tried several
medications and did not "seem to have a tolerance for them" and "didn't find one
that worked well."  (AR at 180-81.)  She indicated that the side effects of those
medications aggravated her asthma "a lot."  (AR at 181, 186.)  Moreover, the
medications for her depression did not seem to help her depression.  (AR at 186.)
As a result, after a few months of trying different medications, she stopped taking
them.  (AR at 181, 186.)  At the time of the hearing, without medication for her
depression, she reported being irritable, avoiding social situations "at all costs"
because she does not like anybody, and having difficulty concentrating.  (AR at
181.)  The ALJ's failure to address the side effects of Plaintiff's anti-depressants,
which Plaintiff was prescribed for only a few months and had ceased taking at least
by January 23, 2004 (see AR at 138), more than a year prior to the hearing, does
not constitute legal error.  See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir.
1998) (a disability claimant must show that a medically determinable physical or
mental impairment prevents the claimant from engaging in substantial gainful
activity and that the impairment is expected to result in death or to last for a
continuous period of at least twelve months).  Plaintiff's argument that this matter
should be remanded in order to properly consider the side effects of any anti-

_____

[7]  In her Asthma Questionnaire, Plaintiff reported that she takes her
breathing treatment approximately two times a week.  (AR at 57.)  In her Disability
Appeal Report, she indicated that she had to do the breathing treatment "several
times a day."  (AR at 94.)  She did not testify at the hearing regarding the number
of times she had to give herself the breathing treatments.

1  depressants (or other medications) previously taken and the effect they may have

2  on Plaintiff's ability to sustain competitive employment, is without merit.

3       The Court agrees with the Commissioner that although the ALJ excluded

4  any analysis of the side effects of Plaintiff's medications, Plaintiff offered no

5  objective evidence that her medications affected her ability to work.  If anything,

6  she reported that her asthma medications help her breathing and her depression

7  remained the same with or without medication.  Contrary to Plaintiff's suggestion

8  that medications that "cause fatigue, drowsiness, and interfere with mental clarity

9  and memory should be considered insomuch as they would have significant

10  ramifications as to Plaintiff's ability to maintain successful employment" (see JS at

11  17), there is no indication in the record that either her present or past medication

12  regimens had any such effects on her.[8]  Thus, there was no reason for the ALJ to

13  consider these potential side effects, and there was no legal error in his failure to do

14  so.

**IV.**

**ORDER**

17       IT THEREFORE IS ORDERED that Judgment be entered affirming the

18  decision of the Commissioner, and dismissing this action with prejudice.

21  DATED:  July 6, 2007

                    HONORABLE OSWALD PARADA
                    United States Magistrate Judge

---

27       [8]  Although in her Asthma Questionnaire Plaintiff reported feeling "always
tired," she did not indicate this was related to the side effects of any medication.
28  (AR at 58.)